UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                        Case No.:   2:25-cv-444-SPC-NPM

MICHAEL KYLE MARTIN and
LAUREN HERTZ,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are two motions to dismiss—one filed by Lauren Hertz ("Hertz") (Docs. 47, 48) and one filed by Michael Kyle Martin ("Deputy Martin") (Doc. 49). Plaintiff Andrew Sheets, proceeding pro se,[1] responded to each motion. (Docs. 50, 51). For the reasons below, the Court grants the motions.

---

[1] Although Plaintiff is proceeding without a lawyer, he is no stranger to federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv-704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Pribble*, 2:25-cv-500-KCD-NPM; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Woelk et al.*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM; *Sheets v. Angelini et al.*, 2:25-cv-653-SPC-NPM*; Sheets v. Angelini et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF.

## Background

This is a case about alleged viewpoint discrimination and retaliation due to a protest. The setting is a public sidewalk just outside of Vineland Elementary School in Charlotte County, Florida, during parent pickup. Plaintiff is protesting a school resource officer who purportedly viewed porn while on duty and a teacher (who happens to be the Charlotte County Sheriff's wife) who supposedly condoned such conduct. Because Plaintiff finds this conduct reprehensible, he displays two signs outside the elementary school to inform parents of the conduct taking place at the school.

For context, one sign depicts Charlotte County Sheriff Bill Prummell with a Hitler mustache, his wife (the teacher Plaintiff was protesting), a large cutout of four provocative[2] women with the Pornhub logo, and the caption "DID TARA PRUMMELL SAY ITS FINE 4 COPS 2 LOOK AT PORN AT SCHOOL." The other sign includes an image of Sheriff Prummell and a female deputy sandwiched between two images of Sheriff Prummell with a Hitler mustache, and a large caption "DID SHERIFF BILL PRUMELL HAVE MULTIPLE ILLEGAL AFFAIRS AT WORK." Plaintiff also dons a shirt that says, "Fuck the Police." (Video Exhibit (hereinafter "VE") 00:53; Doc. 49-1; Doc. 49-2).

---

[2] No nudity is depicted.

Available video footage[3] begins around 1:56 p.m.[4] Plaintiff is holding his sign at a corner where the elementary school exits onto the main road. Over the next half-hour, parents passing by while picking up their children from the school voice their displeasure with Plaintiff generally and with Plaintiff's sign, which they feel is not appropriate for school-aged children. No parent audibly expresses disagreement with Plaintiff's message or viewpoint. Still, Plaintiff provides a variety of vulgar responses to these parents, such as telling them to "get on the train like the Jews," that they "don't deserve to live," and that they are "un-American." He frequently tells them to "fuck off," says "fuck you and your mother" and calls them terms like "bitch," "cunt," and "Nazi." Traffic often backs up as cars stop to observe Plaintiff or make comments to him. (VE 6:05–14:58).

---

[3] Deputy Martin submitted a flash drive containing video footage of the incident with his motion to dismiss. (Doc. 20). The Court can consider the video footage at this stage as it is central to Plaintiff's claim and not disputed—nor can Plaintiff reasonably dispute the footage given it comes from his body camera, and he references it (with specific time stamps) in the second amended complaint. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); *see also Clark v. Collier Cnty. Sheriff Kevin Rambosk*, No. 2:24-CV-692-SPC-NPM, 2025 WL 589241, at *3 (M.D. Fla. Feb. 24, 2025) (considering officer's body camera footage at motion to dismiss stage in § 1983 action).
   The video cuts at various points, meaning it does not show the entirety of Plaintiff's protest. However, it includes all the incidents referenced in Plaintiff's second amended complaint. The video and Plaintiff's allegations are largely consistent, but where they contradict, the video governs. *See Swinford v. Santos*, 121 F.4th 179, 190 (11th Cir. 2024) ("Where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video." (cleaned up and citation omitted)).

[4] The Court applies the time as depicted in the video footage.

3

At around 2:18 p.m., Hertz enters the scene. As she exits the school—with her son—they are forced to walk past Plaintiff. She asks Plaintiff to turn his sign around because she does not want her son to see it. Plaintiff responds by telling her to "get on the train like the Jews did," to go "talk to the cops," that she does "not deserve to be alive," and to "fuck off and die." He adds that if Hertz were an American, she would believe in free speech, calls her a dumb bitch, and then tells her, "don't be a cunt." (VE 10:50–11:27).

While Plaintiff uses some colorful language, he also receives some. At one point, a man in a truck exiting the school with his young child in the back seat tells Plaintiff not to show his sign outside the school and refers to Plaintiff as an "asshole." Plaintiff responds by telling the driver to "get on the train like the Jews did." (VE 11:37–11:48). Later, a man in a red car pulls up alongside Plaintiff as he walks down the sidewalk. The man reminds Plaintiff he is in front of an elementary school and says, "you obviously don't have children." During the exchange, traffic backs up behind the man. The man then pulls off the road in front of Plaintiff and asks, "what's wrong with you?" Plaintiff then grabs hold of a can of Frontiersman bear spray. (VE 13:04–13:58). Another woman in a black SUV criticizes Plaintiff, tells him to shut up, and reminds him that he is in front of an elementary school. Plaintiff responds by telling her to fuck off and calling her an "un-American cunt." (VE 14:06–14:50).

4

At around 2:31 p.m., Deputy Martin approaches Plaintiff. The interaction is brief, totaling just over a minute. He hands Plaintiff a copy of Fla. Stat. § 810.0975.[5] He then informs Plaintiff that he is in a school safety zone (as defined in the statute). Plaintiff argues that protesting is legal under the statute.[6] Deputy Martin responds that protesting is not legal and advises Plaintiff: "if you don't have a legitimate business here, then you can't be here." (VE 1:16–1:50). Plaintiff then walks away from Deputy Marin and leaves the premises, calling Deputy Martin a "fucking liar" and shouting other expletives along the way. (VE 1:50–2:21).

Deputy Martin never arrests Plaintiff. And while Deputy Martin first approached Plaintiff at 2:31 p.m., an unidentifiable deputy from the Charlotte County Sheriff's Office was present on scene starting around 2:10 p.m. (VE 7:40 (depicting officer's vehicle pulling up)). Thus, Plaintiff protested in a deputy's presence for (at least) twenty minutes before Deputy Martin showed him a copy of the statute.

---

[5] This statute makes it a crime for a person to enter or remain in a "school safety zone" (meaning in or within 500 feet of a school) from one hour before the start of school session until one hour after the conclusion of school session when the person does not have "legitimate business in the school safety zone" or other authorization to be there. Fla. Stat. § 810.0975(1)–(2). The term "legitimate business in a school safety zone" means having a purpose "which is connected with the operation of any areas included within the school safety zone[.]" *Meinecke v. State*, 351 So. 3d 1196, 1201 (Fla. Dist. Ct. App. 2022) (internal quotations and citations omitted).

[6] Plaintiff is referring to Fla. Stat. § 810.0975(3), which states: "This section does not abridge or infringe upon the right of any person to peaceably assemble and protest." Plaintiff understands this as an exception for protesters.

5

The next day, Hertz issues a report to Deputy Martin (Doc. 49-2 at 5), which Plaintiff claims included several false statements. Deputy Martin nevertheless includes Hertz's statements in his incident report. (Doc. 49-2). Plaintiff also believes Deputy Martin omitted several material facts from the incident report. Deputy Martin and Hertz allegedly agreed to orchestrate this false report as part of a conspiracy to infringe on Plaintiff's First Amendment rights. Because of the incident report, Plaintiff became fearful and ceased all future protests at the school.

Plaintiff brings claims against Deputy Martin under 42 U.S.C. § 1983 for viewpoint discrimination (count I), First Amendment conspiracy (count II), First Amendment retaliation (count III), and Fourth Amendment false arrest (count IV). He also brings claims against Hertz for filing a false police report in violation of Fla. Stat. § 837.05 (count V) and conspiracy to violate the First Amendment (count VI). (Doc. 45). Defendants move to dismiss these claims. Deputy Martin raises a qualified immunity defense, argues Plaintiff fails to state a claim, and argues the second amended complaint is a shotgun pleading. (Doc. 49). Hertz argues Plaintiff fails to state a claim. (Doc. 48).

**Legal Standard**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare

6

"labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## Analysis

Right out of the starting blocks, the Court dismisses Plaintiff's second amended complaint because it is a shotgun pleading. "Shotgun pleadings are cumbersome, confusing complaints that do not comply with [the] pleading requirements." *Behr v. Uthmeier*, No. 25-80915-CIV, 2025 WL 2552616, at *1 (S.D. Fla. Sept. 5, 2025) (citations omitted). Plaintiff's second amended complaint warrants this label because it does not indicate which facts are assigned to which claim. This is improper. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *DeJean v. Kelly*, No. 8:22-CV-0461-KKM-TGW, 2022 WL 1188404, at *1 (M.D. Fla. Apr. 21, 2022) (finding a shotgun pleading when

7

"it is entirely unclear which allegations go with which claims in [the] Amended Complaint"). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Given Plaintiff's extensive experience in federal court, he should be well versed with the pleading standards.

Despite the lack of clarity in Plaintiff's pleading, the Court presses on to the merits. Up first is Plaintiff's viewpoint-discrimination claim (count I). "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). To prevail on his claim, Plaintiff must allege facts showing Deputy Martin would not have instructed Plaintiff to leave the premises but for Plaintiff's viewpoint. *See Nieves v. Bartlett*, 587 U.S. 391, 416 (2019) (Gorsuch, J., concurring) ("To show an arrest violated the First Amendment, everyone agrees a plaintiff must prove the officer would not have arrested him but for his protected speech."). Plaintiff's allegations do not meet this threshold.

As best the Court can surmise, Plaintiff believes Deputy Martin compelled Plaintiff to leave the school safety zone (thereby restricting him from protesting) solely because he disagreed with the message on Plaintiff's signs. But he provides no facts to support this belief. Plaintiff offers only allegations

8

that Deputy Martin (1) concealed the exemption to § 810.0975 when he handed Plaintiff the statute; (2) falsely arrested him; and (3) supported counter-protesters who disagreed with Plaintiff's viewpoint. (Doc. 45 ¶¶ 40–41). This is insufficient.

The allegations do not support a viewpoint discrimination claim. Plaintiff's assertion that Deputy Martin concealed the exemption to § 810.0975,[7] at most, suggests Deputy Martin was being less than forthright and that any arrest may have been unlawful. But Plaintiff's insinuation that this concealment means Deputy Martin disagreed with Plaintiff's viewpoint—as opposed to simply wanting Plaintiff to leave the school safety zone during parent pickup because of the resulting disruption—is a bridge too far.[8] On that score, Plaintiff's assertion that his false arrest constitutes viewpoint discrimination falls flat because Plaintiff was never arrested or seized. And

---

[7] Plaintiff maintains that § 810.0975(3) exempts protesters under the statute. Assuming, without deciding, that Plaintiff is correct, and Deputy Martin erroneously cited § 810.0975 when instructing Plaintiff to leave the school safety zone, the purported unlawfulness of Deputy Martin's command is irrelevant to a viewpoint discrimination claim. Rather, the relevant inquiry is whether Deputy Martin's conduct was motivated by Plaintiff's viewpoint. *Cf. Sheets v. Jimenez*, No. 2:24-CV-704-SPC-KCD, 2025 WL 2161684, at *1 (M.D. Fla. July 30, 2025) (explaining that, for a selective enforcement claim based on viewpoint, "[i]t matters not whether the prosecution, or in this case the trespass warning, was legitimate. The relevant inquiry is whether others similarly situated were not cited . . . under the ordinance.").

[8] What's more, Plaintiff's allegation that Deputy Martin concealed the exemption is confusing given Deputy Martin handed Plaintiff a copy of the statute.

even if he was, a false arrest, without more, does not plausibly allege viewpoint discrimination.

Plaintiff's attempt to allege comparators fares no better. As mentioned, he alleges that Deputy Martin supported counterprotesters who disagreed with Plaintiff's viewpoint.[9] But these "counterprotesters" were parents voicing their opinions from their cars or on the sidewalk. As parents of the students, they had "legitimate business in the school safety zone" (as the term is used in § 810.0975), *i.e.*, picking up their children from the school. Plaintiff, who was simply there protesting, did not. And unlike Plaintiff, the "counterprotesters" were merely passing by as opposed to loitering on the corner protesting. Thus, Deputy Martin had no reason to instruct the parents to leave the school safety zone for violating § 810.0975, as he did with Plaintiff.

That's not all. Despite Plaintiff's allegation that the counterprotesters disagreed with Plaintiff's viewpoint, none of the parents who made passing comments to Plaintiff expressed or otherwise indicated disagreement with Plaintiff's viewpoint or message. Rather, each was troubled with Plaintiff's display, which they perceived as inappropriate for elementary-age children. Plaintiff alleges no facts to suggest otherwise.

---

[9] Plaintiff does not allege any facts explaining how Deputy Martin "supported" the counterprotesters. But construing his second amended complaint liberally, the Court presumes he means that Deputy Martin treated the parents more favorably because he agreed with the parents' disdain for Plaintiff's viewpoint.

10

One more point about comparators. Plaintiff complains that the "counterprotesters" committed various traffic infractions and used profanity, yet Deputy Martin took no action against them. But Plaintiff was not cited for a traffic infraction or for using profanity either. Rather, Deputy Martin instructed Plaintiff to leave the school safety zone because Plaintiff had no legitimate school-related business (in violation of § 810.0975). As mentioned above, the same is not true of the parents/alleged counterprotesters. So there was no disparate treatment. Put simply, the "counterprotesters" and Plaintiff are not similarly situated. *Cf. Sheets v. Jimenez*, No. 2:24-CV-704-SPC-KCD, 2025 WL 1725954, at *3 (M.D. Fla. June 20, 2025) (dismissing Plaintiff's First Amendment selective-enforcement claim because, unlike Plaintiff, the alleged comparators did not violate the ordinance under which Plaintiff was cited and engaged in entirely different conduct); *Matacchiero*, 2024 WL 3629442, at *6 ("[B]ecause the incidents involving Plaintiff and Mr. Curry are not comparable, Plaintiff cannot show viewpoint discrimination based on selective enforcement.").

In sum, Plaintiff fails to allege any facts suggesting Deputy Martin approached Plaintiff because he disagreed with Plaintiff's viewpoint. Indeed, the video footage suggests otherwise. So Plaintiff's viewpoint discrimination claim fails, and the Court dismisses it without prejudice.

Next, Plaintiff brings a § 1983 conspiracy claim (count II), alleging that Deputy Martin and Hertz conspired to violate his First Amendment rights. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citation omitted). "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights." *Id.* (citation and quotations omitted). "The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Id.*

Plaintiff's conspiracy claim (as best the Court understands it) fails. He alleges that Hertz gave a false report to Deputy Martin, which Deputy Martin then included in the incident report, and that Deputy Martin excluded material details from the incident report. He broadly alleges that the two "had an understanding." (Doc. 45 ¶ 50). And he appears to claim that the incident report caused him to become fearful and, consequentially, cease all future protests in front of Vineland Elementary School. (Doc. 45 ¶¶ 42–51). These allegations are inadequate.

The first problem with Plaintiff's conspiracy claim is he fails to allege facts demonstrating Deputy Martin and Hertz came to an agreement. Rather, he conclusorily asserts that the two "had an understanding" with no facts to

support this. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) ("Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim."). And the simple fact that Hertz provided a statement to Deputy Martin that he incorporated into his report is not enough to suggest the two reached an understanding to deprive Plaintiff of his First Amendment rights. *See Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) ("Though circumstantial evidence can help prove a section 1983 conspiracy, the complaint must make particularized allegations that a conspiracy existed." (internal citation omitted)). Without more, Plaintiff fails to satisfy this element.

Nor does Plaintiff plausibly allege the purported conspiracy impinged his First Amendment rights. He seems to claim the incident report caused him to become fearful, so he ceased all future protests in front of the school.[10] But Plaintiff's subjective fear and voluntary decision to cease future protests is not an "actual denial" of his constitutional right. *Grider*, 618 F.3d at 1260. So the Court dismisses count II without prejudice.

---

[10] Notably, this fear did not stop Plaintiff from protesting outside of a different elementary school two months later. *See Sheets v. Angelini et al.*, 2:25-cv-653-SPC-NPM (Plaintiff's viewpoint discrimination, retaliation, and false arrest lawsuit after he was convicted of breach of peace and disruption of a school function during protest outside Sallie Jones Elementary School on July 22, 2021).

Turning now to Plaintiff's retaliation claim (count III). "Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir.2005)). "The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id.* To satisfy the last element, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

Plaintiff fails to satisfy the causal element of a retaliation claim. As discussed in his viewpoint discrimination claim, he alleges no facts suggesting Deputy Martin instructed Plaintiff to leave the premises because of his protected speech—as opposed to his belief Plaintiff was violating § 810.0975 and the resulting disruption to parent pickup. *See Nieves*, 587 U.S. at 399 (explaining to prevail on a First Amendment retaliation claim, the plaintiff must show the adverse action would not have been taken against the plaintiff

"but for" the retaliatory motive). So this claim also fails, and the Court dismisses it without prejudice.[11]

Plaintiff's final claim against Deputy Martin is false arrest (count IV). "A false arrest claim under section 1983 is substantially the same as a claim for false arrest under Florida law." *Lopez v. Ciy of Opa-Locka*, 2025 WL 1754351 (S.D. Fla. 2025) (cleaned up and citation omitted). "To prevail on a Florida-law false arrest claim, a plaintiff must prove three things: (1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention not warranted by the circumstances; and (3) an intentional detention." *Id.* (cleaned up and citation omitted). Plaintiff cannot make such a showing.

Plaintiff was not "seized," much less arrested, under the Fourth Amendment. "For Fourth Amendment purposes, a seizure occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1327 (11th Cir. 2017) (internal citations and quotations omitted). "An encounter between a police officer and a citizen becomes a seizure when a reasonable person would not feel free to terminate the encounter." *Id.*

---

[11] Deputy Martin argues he is entitled to qualified immunity on Plaintiffs' claims. (Doc. 49). But Plaintiff will be permitted one opportunity to amend them. Until the Court understands the basis of Plaintiff's claims, the Court does not reach the qualified immunity analysis.

15

(citations omitted). No reasonable person in Plaintiff's position would feel Deputy Martin restrained his liberty. Deputy Martin approached Plaintiff, provided him with a copy of the statute, and advised Plaintiff he could not remain on the premises. Then Plaintiff left. In fact, Plaintiff ended the encounter by walking away from Deputy Martin. This is the opposite of a seizure.[12] If anything, Deputy Martin's conduct amounted to a verbal warning, which is not enough for a false arrest claim. *See Varnado v. Manager of Cedar Cove Apt. Complex*, No. 6:05-CV-1768-ORL-28-DAB, 2006 WL 1679698, at *3 (M.D. Fla. June 12, 2006) (explaining a written trespass warning "is not the equivalent of an arrest, under either federal or Florida law"). So the Court dismisses count IV with prejudice.

Now the two claims against Hertz, both of which are easily dismissed. In count V, Plaintiff brings a claim against Hertz under Fla. Stat. § 837.05 for filing a false police report. The Court dismisses this claim with prejudice because § 837.05 is a criminal statute with no private right of action. *See Broodnox v. Wal-Mart Stores E., LP*, No. 3:15CV425/MCR/EMT, 2016 WL 3619665, at *7 (N.D. Fla. June 14, 2016), *report and recommendation adopted sub nom.*, 2016 WL 3629089 (June 29, 2016) (dismissing as frivolous the

---

[12] Plaintiff asks the Court to apply the test adopted in *Florida v. Bostick*, 501 U.S. 429 (1991). But that case is inapplicable. There, Bostick was on a bus and, thus, his freedom of movement was "restricted by a factor independent of police conduct[.]" *Id.* at 436; *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) (applying the *Bostick* framework to passengers is a vehicle during a traffic stop). That is not the case here.

plaintiff's claim under Fla. Stat. § 837.05 because it contains no private right of action). And in count VI, Plaintiff again alleges Hertz and Deputy Martin conspired to violate his First Amendment rights. The Court dismisses without prejudice count VI for the same reasons discussed in Plaintiff's conspiracy claim against Deputy Martin.

The Court will give Plaintiff one additional opportunity to get this case off the ground. Any further pleading deficiencies will result in dismissal of this action with prejudice. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 47, 49) are **GRANTED.**

2. Counts IV and V are **DISMISSED with prejudice.**

3. The remaining counts are **DISMISSED without prejudice.**

4. On or before **November 11, 2025**, Plaintiff may file an amended complaint. **Failure to do so will cause the Court to dismiss this case without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on October 28, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record