UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                      Case No.:  2:25-cv-444-SPC-NPM

MICHAEL KYLE MARTIN and
LAUREN HERTZ,

    Defendants.

## OPINION AND ORDER

Before the Court are two motions to dismiss—one filed by Lauren Hertz with an accompanying memorandum of law (Docs. 54, 55) and one filed by Deputy Michael Kyle Martin (Doc. 56). Plaintiff Andrew Sheets, proceeding pro se,[1] responded to each motion. (Docs. 57, 58). For the reasons below, the Court grants the motions.

---

[1] Although Plaintiff is proceeding without a lawyer, he is no stranger to federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv-704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Pribble*, 2:25-cv-500-KCD-NPM; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Woelk et al.*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM; *Sheets v. Angelini et al.*, 2:25-cv-653-SPC-NPM*; Sheets v. Angelini et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF; *Sheets v. Renz et al.*, 2:25-cv-1000-KCD-DNF.

## Background

This case involves alleged viewpoint discrimination and retaliation due to a protest. The Court previously outlined the facts of this case extensively (Doc. 52), so the following is an abbreviated version.

Plaintiff conducted an anti-law-enforcement protest just outside Vineland Elementary School in Charlotte County, Florida, during parent pickup. Parents passing by while picking up their children from the school voiced their displeasure with Plaintiff generally and with Plaintiff's sign, which they felt was inappropriate for school-aged children. No parent expressed disagreement with Plaintiff's message or viewpoint.[2]

At around 2:18 p.m., Hertz—a parent picking up her child from the school—exited the school with her son. She was forced to walk past Plaintiff. She asked Plaintiff to turn his sign around because she did not want her son to see it. Plaintiff responded with a myriad of vulgar epithets.

Thirteen minutes later, Deputy Martin approached Plaintiff. The interaction was brief, totaling just over a minute. He handed Plaintiff a copy

---

[2] Deputy Martin repeats this line in his motion. (Doc. 56 at 4). In doing so, according to Plaintiff, Deputy Martin showed "extreme ignorance and lack of 1st Amendment understanding[.]" (Doc. 58 at 6). In Plaintiff's view, "[i]f you voice displeasure with Plaintiff's sign that means you disagree with his viewpoint." (*Id.* at 7). Although Plaintiff directs the insult at Deputy Martin, his intent to insult the Court is clear. Regardless, Plaintiff is incorrect. A passing parent may very well agree with Plaintiff's message that officers should not look at pornography while on duty but nevertheless express displeasure with her elementary-school-aged child being exposed to the vulgarity on Plaintiff's sign and attire. Put differently, a parent can agree with (or have no opinion on) Plaintiff's message but disapprove the way he shares it.

of Fla. Stat. § 810.0975.[3] He then informed Plaintiff that he was in a school safety zone (as defined in the statute). Plaintiff argued that his protest was legal under the statute.[4] Deputy Martin responded that Plaintiff's protest was not legal and advised Plaintiff: "if you don't have a legitimate business here, then you can't be here." Plaintiff then walked away from Deputy Marin and left the premises, calling Deputy Martin a "fucking liar" and shouting other expletives along the way. Deputy Martin never arrested Plaintiff.

The next day, Hertz issued a statement to Deputy Martin, which Plaintiff claims included several falsities. Deputy Martin nevertheless includes Hertz's statements in his incident report. (Doc. 53-1). Plaintiff also believes Deputy Martin omitted several material facts from the incident report. Deputy Martin and Hertz allegedly agreed to orchestrate this false report as part of a conspiracy to infringe on Plaintiff's First Amendment rights. Because of the incident report, Plaintiff became fearful and ceased all future protests at the school.

---

[3] This statute makes it a crime for a person to enter or remain in a "school safety zone" (meaning in or within 500 feet of a school) from one hour before the start of school session until one hour after the conclusion of school session when the person does not have "legitimate business in the school safety zone" or other authorization to be there. Fla. Stat. § 810.0975(1)–(2). The term "legitimate business in a school safety zone" means having a purpose "which is connected with the operation of any areas included within the school safety zone[.]" *Meinecke v. State*, 351 So. 3d 1196, 1201 (Fla. Dist. Ct. App. 2022) (internal quotations and citations omitted).

[4] Plaintiff is referring to Fla. Stat. § 810.0975(3), which states: "This section does not abridge or infringe upon the right of any person to peaceably assemble and protest." Plaintiff views this language as an exception for protesters.

Plaintiff brings claims against Deputy Martin under 42 U.S.C. § 1983 for viewpoint discrimination (count I) and First Amendment retaliation (count II). He also brings a claim against Deputy Martin and Hertz for conspiracy to violate the First Amendment (count III). (Doc. 53). Defendants move to dismiss these claims. Deputy Martin raises a qualified immunity defense and argues Plaintiff fails to state a claim. (Doc. 56). Hertz argues Plaintiff fails to state a claim. (Doc. 55).

## Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## Analysis

Up first is Plaintiff's viewpoint-discrimination claim (count I). "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). To prevail on his claim, Plaintiff must allege facts showing Deputy Martin would not have instructed Plaintiff to leave the premises but for Plaintiff's viewpoint. *See Nieves v. Bartlett*, 587 U.S. 391, 416 (2019) (Gorsuch, J., concurring) ("To show an arrest violated the First Amendment, everyone agrees a plaintiff must prove the officer would not have arrested him but for his protected speech."). Indeed, "[a] critical element of a selective enforcement claim is that a comparator or, in other words, 'others similarly situated' have been treated differently than the plaintiff." *See Shadow Oaks, LLP v. City of Ocala*, No. 5:21-CV-564-ACC-PRL, 2022 WL 22247808, at *5 (M.D. Fla. Nov. 4, 2022), *report and recommendation adopted*, 2022 WL 22247805 (Dec. 1, 2022). Plaintiff's allegations do not meet this threshold.

Plaintiff broadly alleges that Deputy Martin "targeted Plaintiff for the words on Plaintiff's signs, clothing and speech[.]" (Doc. 53 ¶ 68). He alleges no facts to support this claim. The most he offers is his assertion that Deputy Martin "concealed the free speech exemption in 810.0975 so [he] could compel

5

and coerce through verbal commands; [*sic*] for Plaintiff to stop his protest and leave the public park." (*Id.*).  But as the Court previously advised Plaintiff, his "insinuation that this concealment means Deputy Martin disagreed with Plaintiff's viewpoint . . . is a bridge too far." (Doc. 52 at 9).[5]  Otherwise, his conclusory allegation that Deputy Martin targeted Plaintiff for his viewpoint is insufficient.

Plaintiff attempts to allege proper comparators but comes up short.  He asserts that during a 2020 Black Lives Matter protest, many protesters held signs, yet none were cited.  At a 2022 abortion protest, individuals held signs with the word "fuck" but were not cited.  And at a 2018 March for Our Lives protest, no citations were issued for held political viewpoints. (Doc. 53 ¶¶ 60–65).  Plaintiff believes these instances demonstrate Deputy Martin's intervention with Plaintiff's protest must have been because of his anti-government viewpoint.  Otherwise, Deputy Martin surely would have cited these other protesters as well.

These comparators are inadequate for multiple reasons.  First, Plaintiff fails to allege Deputy Martin was present at those protests and exercised his discretion not to cite the protesters.  Second, Plaintiff argues that no one at

---

[5] As the Court also previously pointed out, Plaintiff's allegation that Deputy Martin concealed the exemption is confusing given Deputy Martin handed Plaintiff a copy of the statute. (Doc. 52 at 9 n.8).  Plaintiff does nothing to clarify.

6

those protests was cited for the contents of their signs. But neither was Plaintiff. In fact, Plaintiff was not cited for anything at all. Deputy Martin asked Plaintiff to leave the school safety zone because he was violating § 810.0975. There is no indication the other protests were anywhere near a school. So the circumstances are not the same. *See Matacchiero v. McCormick*, No. 3:24-CV-105-TKW-ZCB, 2024 WL 3629442, at *6 (N.D. Fla. Aug. 1, 2024) ("[B]ecause the incidents involving Plaintiff and Mr. Curry are not comparable, Plaintiff cannot show viewpoint discrimination based on selective enforcement.").

In his response, Plaintiff remains steadfast that if he did not have his sign, was not wearing his "fuck the police" shirt, and was not yelling profanities, Deputy Martin would not have told him to leave. (Doc. 58 at 8, 14). Maybe that is true. But with no factual allegations to plausibly support this theory, Plaintiff again fails to state a viewpoint discrimination claim.

Turning now to Plaintiff's retaliation claim (count II). "Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir. 2005)). "The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act,

and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id.* To satisfy the last element, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

Plaintiff again fails to satisfy the causal element of a retaliation claim. As discussed above, Plaintiff alleges no facts suggesting Deputy Martin instructed Plaintiff to leave the premises because of his anti-law-enforcement speech. *See Nieves*, 587 U.S. at 399 (explaining to prevail on a First Amendment retaliation claim, the plaintiff must show the adverse action would not have been taken against the plaintiff "but for" the retaliatory motive). So this claim also fails.

Finally, Plaintiff brings a § 1983 conspiracy claim (count III), alleging that Deputy Martin and Hertz conspired to violate his First Amendment rights. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citation omitted). "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights." *Id.* (citation and quotations omitted). "The conspiratorial acts must impinge upon the

8

federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Id.*

Plaintiff's conspiracy claim fails. He alleges that Hertz gave a false report to Deputy Martin, which Deputy Martin then included in the incident report, and that Deputy Martin excluded material details from the incident report. He broadly alleges that the two "had an understanding" to create the false report. (Doc. 53 ¶ 83). And he claims that the false incident report caused him to cease all future protests in front of Vineland Elementary School. (*Id.* ¶ 89). These allegations are inadequate.

As an initial matter, Plaintiff fails to allege facts demonstrating Deputy Martin and Hertz came to an agreement. Rather, he conclusorily asserts that the two "had an understanding" to create a false report with no supporting facts. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty.*, Fla., 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) ("Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim."). The simple fact that Hertz provided a statement to Deputy Martin that he incorporated into his report is not enough to suggest the two reached an understanding to deprive Plaintiff of his First Amendment rights. *See Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) ("Though circumstantial evidence can help prove a section 1983 conspiracy, the complaint must make particularized allegations

that a conspiracy existed." (internal citation omitted)). Without more, Plaintiff fails to satisfy this element.

Nor does Plaintiff plausibly allege the purported conspiracy impinged his First Amendment rights. He claims the incident report caused him to cease all future protests in front of the school. But he fails to explain how. His otherwise voluntary decision to cease future protests is not an "actual denial" of his constitutional right.[6] *Grider*, 618 F.3d at 1260. And because Plaintiff fails to allege a First Amendment violation, he has not alleged an "actionable wrong" to support his conspiracy. *See id.* So the Court dismisses count III.[7]

Plaintiff seems to believe that law enforcement intervention while he is protesting law enforcement is a per se First Amendment violation. But that is not the case. The Court warned Plaintiff that his second amended complaint was his final chance to get this case off the ground. (Doc. 52 at 17). Even so, the deficiencies remain. Because he still fails to state a claim, the Court dismisses this case with prejudice. *See Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010) ("[R]epeated failure to cure deficiencies by amendments

---

[6] To the extent Plaintiff believes Deputy Martin instructing Plaintiff to leave the premises constituted the actual denial of his constitutional right, that cannot not support his conspiracy either because it occurred before Hertz issued her statement to Deputy Martin.

[7] Because Plaintiff fails to state a claim under Rule 12(b)(6), the Court need not reach the qualified immunity analysis. *See Cuyler v. McDonough*, No. 8:22-CV-263-WFJ-AEP, 2022 WL 21737653, at *6 (M.D. Fla. Oct. 20, 2022) (explaining the qualified immunity "analysis need not be reached because under Rule 12(b)(6), Plaintiff fails to assert constitutional violations sufficient to survive a motion to dismiss").

previously allowed . . . can justify dismissal with prejudice." (cleaned up and citation omitted)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 54, 56) are **GRANTED.**

2. Plaintiff's case is **DISMISSED with prejudice.**

3. The Clerk is **DIRECTED** to deny all pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 9, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record